**PANHANDLE CONST. CO. v. CITY OF SPEARMAN.**

No. 4509.

Court of Civil Appeals of Texas. Amarillo.
Nov. 18, 1935.

Rehearing Denied Jan. 6, 1936.

Robt. A. Sowder, of Lubbock, for appellant.

Sanders & Scott, of Amarillo, for appellee.

1054

HALL, Chief Justice.

The city of Spearman sued the appellant, Construction Company, to recover the value of 7,880 yards of caliche alleged to be of the value of 10 cents per cubic yard, which the city claimed had been removed from land which it owned by the appellant without the knowledge and consent of the city.

The appellant answered that if it entered upon the lands belonging to the city it was with the knowledge and consent of said city, under an agreement that appellant should have the caliche free of charge; that the city was endeavoring to let paving contracts for the improvement of certain of its streets, and defendant was a prospective bidder; that the city caused defendant to be informed that the caliche (a necessary material in the performance of the work), would be furnished free of cost, and that defendant need not consider the value of the caliche in making its estimate. That acting upon this information, the defendant reduced its bid by the cost of such item, and used the caliche with plaintiff's knowledge and consent; that plaintiff accepted and received the benefit of the reduced bid, and knew that defendant was using such material without any expectation of paying therefor. That the plans and specifications provided that the city engineer in charge of the work should allocate the accounts between the parties, which was done, and that the engineer charged nothing to the defendant on account of the use of such material. That there was no appeal from the decision of the city engineer, and therefore the city could not maintain the suit successfully. The fact that the caliche was taken by the defendant with the knowledge and consent of the city, and upon the solicitation of the city, acting through its duly authorized officers and agents, was pleaded in estoppel of the city's right to recover in this action.

The defendant further alleged that if the contract did not provide that it should have the caliche free of charge, that such provision was omitted therefrom by mutual mistake, and that to permit the plaintiff to recover herein would be unjust, unequitable, and amount to a fraud upon defendant.

The case was tried to the court without the intervention of a jury.

The court filed findings of fact and conclusions of law, and rendered judgment in favor of the city for the sum of $349, with interest thereon at 6 per cent. per annum from September 1, 1931.

The defendant offered in evidence the deposition of Julian Montgomery, who testified that his firm had been selected as engineers by the city of Spearman to prepare plans and specifications and supervise the work for the paving project involved: that he was shown caliche beds near the city by one of its officers before the contract was let and was present when the contract was let by the city; that he discussed with the officers of the city whether or not caliche would be furnished free of cost from the city's beds to be used in doing the work; that this discussion was with the city manager when the mayor was present; that he had informed the bidders previous to the filing of their bids that the city would make no charge for caliche used from its beds in doing the work. In answer to one interrogatory, he testified: "On the afternoon of March 9, 1931, in the City Hall in Spearman, Mr. Sampson, City Manager, discussed with me the matter of allowing contractors to use caliche from the city bed free of charge. I do not remember Mr. Sampson's words exactly, but he stated in substance the following: 'That the City desired to obtain the pavement as cheaply as possible to the property owners, and for me to notify the contractors that the City would be willing for them to obtain caliche from the City's beds free of charge.' My recollection is that Mr. Sampson and Mr. Cooke (the Mayor) were both present at this conversation. I do not remember that Mr. Cooke had anything to add to Mr. Sampson's statement." He was further asked whether there was any discussion by the city officers respecting the use of the caliche when the bids were opened, and he said, "Yes, but I do not recollect clearly the details of the discussion, but it was in substance that the successful bidder could use the City's caliche from the City's beds free of charge. This was generally discussed by the City officials who were present at the time the bids were opened."

R. D. Moxley testified that he filed the defendant's bid upon which the contract was awarded, and did not figure any cost for the caliche because the city engineer had told him the city would furnish it free of cost.

The defendant also offered the testimony of L. J. Von Tungeln who testified that he

was the man on the ground representing defendant, and was told by Mayor Cooke and by Sampson, the city manager, to get caliche from the city's pit, and that nothing was ever said to him about paying for it.·

■ Under the allegation that this agreement was omitted by mutual mistake from the written .contract subsequently entered into, this testimony was clearly admissible, and because the court excluded it, we must assume that he did not consider it for any purpose. 17 Tex.Jur. 838, par. 380; Texas Pacific Coal & Oil Co. v. Crabb (Tex.Com.App.) 249 S.W. 835; Middleton v. Brawley (Tex.Civ.App.) 12 S.W.(2d) 257; City of Mission v. Eureka Fire Hose Mfg. Co. (Tex.Civ. App.) 67 S.W.(2d) 455.

■ The rule is established that a municipality which has entered into a contract that it could not lawfully make cannot be held liable for its breach upon the ground of estoppel, but it is equally well established that a city may be estopped to deny the validity of a contract which it had authority to make, but which was executed by an officer without authority, was entered into without the required formalities, and even where the records of the city do not show that such a contract was ever entered into. If the city accepts performance from the other party and enjoys the benefits accruing to it therefrom, it is bound to perform the obligations imposed upon it by the contract, and where the contract has been executed, an action will not lie to recover compensation paid to the contractor. City of Corpus Christi v. Johnson (Tex.Civ.App.) 54 S.W.(2d) 865; McKenzie Const. Co. v. City of San Antonio (Tex. Civ.App) 50 S.W.(2d) 349; City of Port Arthur v. Young (Tex.Civ.App.) 37 S.W. (2d) 385; Sluder v. City of San Antonio (Tex.Com.App.) 2 S.W.(2d) 841; City of Texarkana v. Keeney (Tex.Civ.App.) 50 S.W.(2d) 339.

■ In view of another trial, it is not proper for us to discuss the weight of the testimony upon the issues as to the number of yards of caliche used and the value thereof. There seems to have been a conflict in the evidence upon those issues, which it is the prerogative of the jury to settle without any suggestion from this court.

The tenth proposition, by which it is insisted because the contract provides that the engineer in charge shall adjust the accounts between the city and the contractor, and that the engineer did adjust such accounts and failed to find anything in favor of the city for the value of the caliche used, that the contention was concluded by the terms of the written contract, and the trial court erred in holding otherwise is an insistence not supported by the record.

For the errors pointed out, the judgment is reversed, and the cause is remanded.

## On Motion for Rehearing.

The appellee insists that we erred in holding that the action of the trial judge in excluding certain testimony of Julian Montgomery constituted reversible error.

Montgomery testified by deposition that he was a civil engineer, and that his firm had been employed by the city of Spearman to prepare plans and specifications for certain paving to be done, and to superintend the work. He had testified that prior to the time of receiving bids he had discussed with the city officials the question as to whether the city would furnish, free of charge, to the successful bidder caliche from certain beds of that material owned by the city. He stated that he had discussed it with Sampson, city manager, and Cooke, the mayor, on March 9, 1931, in the city hall in Spearman, and that he had informed all bidders previous to the filing of their bids that the city would make no charge for the use of its caliche. Then he · was asked to state the substance of the conversation he had with the officer or officers of the city previous to the opening of the bids respecting the use of the caliche, and to state what was said by each party present.

The objection made to this is that it was immaterial and irrelevant and serves no purpose whatsoever in the lawsuit, that it varied the express terms of the contract entered into between the construction company and the city, and there were no pleadings to support the admissibility of any such answer. ᵕ

The question and answer were excluded.

The answer is as follows: "On the afternoon of March 9, 1931, in the City Hall at Spearman, Texas, Mr. Sampson, City Manager, discussed with me the matter of allowing the contractors to use caliche from the City's beds free of charge. I do not remember Mr. Sampson's words exactly, but he stated in substance the following:

That the City desired to obtain the pavement as cheaply as possible to the property owners, and for me to notify the contractors that the City would be willing for them to obtain caliche from the City's beds free of charge. My recollection is that Mr. Sampson and Mr. Cooke were both present at this conversation. I do not recollect that Mr. Cooke had anything to add to Mr. Sampson's statement."

By question 7, Montgomery was asked if there was any discussion in the city offices, or where the bids were opened, among the officers, Cooke, mayor, Commissioners Foote and McLain, and the city manager and secretary, respecting the use of the caliche and the conditions under which it might be used by the successful bidder, and to state fully what such discussion was and who participated therein. The same objection was urged and the court sustained the objections to all this testimony.

■ The objection that the testimony was immaterial and irrelevant and serves no purpose whatsoever in the lawsuit is, in effect, no objection which the court could consider.

■ The objection that it varied the express terms of the contract entered into between the parties should not have been sustained for several reasons. In the first place, the suit was not based upon the contract nor upon a breach thereof. The contract had been executed by both parties, the work had been performed by the construction company, and it had been paid in full for its services. This action was brought to recover the value of the caliche which it is alleged the construction company had wrongfully appropriated to its own use without the knowledge and consent of the city.

■ The pleading was sufficient, in the absence of exceptions, to admit the testimony. The company alleged: "This defendant says that if such provision is not in the written agreement subsequently executed by the plaintiff and the defendant that the same was omitted therefrom by mutual mistake, but with such provision in mind and with the intention to waive the payment, and that for a valuable consideration, with the knowledge of the plaintiff, the defendant agreed to do such work, being permitted to use the caliche from said pit at a less and lower price than it otherwise would have done, and to permit the plaintiff to recover herein would be un-

just and inequitable and amount to a fraud on this defendant."

No demurrer or exception was urged to any part of the pleadings, and we think it is sufficient, under such circumstances, when considered with other allegations, to show that the plaintiff knew that the defendant was using the caliche, that it was taken with its consent, and that it had been induced to enter into the contract at the price named for doing the work upon the representations that no charge would be made for whatever caliche might be used. When considered with the allegations in plaintiff's petition to the effect that the material was taken without the city's consent, the pleading was sufficient to admit testimony showing that the provision was left out of the contract by mutual mistake, even though the action had been based upon the contract. The petition and answer, considered together, contain sufficient allegations to admit testimony on the part of the defendant for the purpose of showing that it was induced, by the representations previously made, to reduce its bid.

■ Matters of inducement, if fraudulent, do not come within the parol evidence rule, and the facts pleaded are sufficient to show an equitable estoppel.

■ The record shows that the city had introduced testimony to the effect that none of its officers had authorized the appellant to use the caliche free of charge. This was offered in support of the city's allegation that the material had been wrongfully taken.

■ It is a fundamental rule that either party is entitled to introduce testimony to rebut evidence introduced by his adversary. Markham v. Carothers, 47 Tex. 21; Ferguson Seed Farms v. McMillan (Tex.Com. App.) 18 S.W.(2d) 595, 63 A.L.R. 1009; Oakes v. Prather (Tex.Civ.App.) 81 S.W. 557; Rodriguez v. Lee, 26 Tex. 32.

■ It is also held that evidence as to prior transactions and conversations between parties is admissible where it tends to illustrate the transaction in question, or where the question of intent or knowledge is material. Wade v. Love, 69 Tex. 522, 7 S.W. 225; National Life & Accident Ins. Co. v. Sanchez (Tex.Civ.App.) 281 S.W. 891; Chilson v. Oheim (Tex.Civ.App.) 171 S.W. 1074.

■ Moreover, the word "caliche" does not appear in the contract or in the notice

to bidders. The stipulation is that the contractor agreed, at its own cost and expense, to furnish all labor, materials, tools, etc. We are not informed as to what other materials were necessary in constructing the pavement.

The motion for rehearing is overruled.